UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 3:18-cr-00232-GPC |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS INFORMATION** |
| v. | |
| RAUL NUNEZ-SEGURA, | **[ECF No. 23]** |
| Defendant. | |

Before the Court is Defendant Raul Nunez-Segura's motion to dismiss the information filed against him. (ECF No. 23.) In the motion, Defendant asserts a collateral attack under 8 U.S.C. § 1326(d) against the validity of his two prior removals. For the reasons set forth below, the Court DENIES the motion.

**I.  Background**

Defendant was born in 1986. (ECF No. 23-2 at 1.[1]) When Defendant was five his parents brought him into the United States; at present, Defendant does not remember living in Mexico. (*Id.*) Defendant's father went to prison after physically abusing Defendant's mother. (*Id.*) Defendant's mother remarried when Defendant was ten. (*Id.*) Defendant has two younger sisters and a younger brother, all three of whom were born in

---

[1] Pagination references in this ruling correspond to the pagination provided by the CM/ECF system.

the United States. (*Id.* at 2.) As Defendant grew up in Santa Ana, California, three uncles, one aunt, and three cousins—all of whom were United States citizens—lived in Anaheim. (*Id.*) Defendant attended school in the United States until eleventh grade, but he spoke Spanish at home. (*Id.*) According to a declaration filed by Defendant, there are many words in English he does not understand and he prefers to speak Spanish, which he understands better. (*Id.*) After eleventh grade Defendant stopped attending high school to take a full-time landscaping job with his stepfather. (*Id.*)

In May 2006 Defendant was convicted of (1) possessing a controlled substance for sale in violation of California Health & Safety Code § 11378, (2) possession of a stolen vehicle, trailer, construction equipment, or vessel in violation of California Penal Code § 496d(a), and (3) grand theft auto in violation of California Penal Code § 487(d)(1). (ECF No. 25 at 3.) In December 2006 Defendant was convicted of attempted unlawful taking of a vehicle in violation of California Vehicle Code § 664-10851(a). (*Id.*) Defendant received a two-year imprisonment sentence as a result of the May 2006 convictions and a one-year concurrent imprisonment sentence for his December 2006 conviction. (ECF No. 23-8.)

**A. First Removal**

On May 8, 2007, Defendant received a Notice of Intent to Issue a Final Administrative Removal Order (the "Removal Notice") under 8 U.S.C. § 1228(b). (ECF No. 23-4.) The Removal Notice stated that Defendant was a native and citizen of Mexico, and he had entered the United States without being inspected and admitted or paroled by a CBP officer. (*Id.* at 2.) It also stated that Defendant was convicted of buying or receiving stolen property in violation of California Penal Code § 496d(a) on May 19, 2006. (*Id.*) The Removal Notice indicated that this was an aggravated felony "as defined in . . . 8 U.S.C. § 1101(a)(43)(G), making Defendant deportable under 8 U.S.C. § 1227(a)(2)(A)(iii). (*Id.*) The Removal Notice made no mention of any of Defendant's other convictions. (*See id.*) The second page of the Removal Notice is a document proving service. (*Id.* at 3.) It states that the individual who served the

Removal Notice on Defendant "explained and/or served" the Removal Notice to Defendant in English. (*Id.*) Defendant's signature appears under a statement indicating that he has received the Removal Notice. (*Id.*) Below that signature are two options for the receiving individual to select: (1) an indication that the individual wishes to contest the removal or wishes to request withholding of removal, or (2) an indication that the individual neither wishes to contest the removal nor wishes to request withholding of removal. (*Id.*) In the copy of the Removal Notice offered by Defendant, the latter choice is selected. (*Id.*) Also selected is a statement indicating that Defendant admitted to the charges in the Removal Notice and wished to be removed to Mexico. (*Id.*) Five minutes after Defendant signed the Removal Notice, an official signed a Final Administrative Removal Order. (*Compare* ECF No. 23-4 at 3 (indicating Defendant signed the Removal Notice at "1430") *with* ECF No. 23-9 at 2 (indicating the final order was signed at "1435").) That final order stated that the official had determined that Defendant had a final conviction for an "aggravated felony as defined in . . . 8 U.S.C. 1101(a)(43)(G), . . . and that the administrative record establishes by clear, convincing, and unequivocal evidence that you are deportable as an alien convicted of an aggravated felony pursuant to . . . 8 U.S.C. 1227(a)92)(A)(iii)." (*Id.*)

      Defendant claims that he does not remember anyone explaining the Removal Notice to him; rather, he states, he was never given an opportunity to read it. (ECF No. 23-2 at 2.) Even if he did read it, Defendant claims, he would not have understood its entirety because it was written in English. (*Id.*) Defendant claims that an immigration official placed "x" marks where Defendant needed to sign and told Defendant to sign in those places. (*Id.*) Defendant claims he did not mark the second page of the Removal Notice indicating that he wished neither to contest the removal nor request withholding of removal, and that if he had understood the contents of the Removal Notice, he would have contested his removal. (*Id.* at 3.) Defendant claims not to remember anyone telling him that he had a right to an attorney; if someone had, he claims, he would have sought the assistance of attorney and would not have signed the Removal Notice. (*Id.*) He

asserts that the manner in which the Removal Notice was presented to him made him feel as if he had no other choice but to sign it. (*Id.*) If he had known his options and the consequences of his removal, he would have challenged it. (*Id.*)

**B. Second Removal**

Within a week of being removed, Defendant attempted to reenter the United States by falsely declaring himself to be a United States citizen and presenting someone else's California birth certificate. (ECF No. 23-5 at 2.) Immigration officials placed Defendant in expedited removal proceedings. The Notice and Order of Expedited Removal ("Expedited Removal Notice") for that proceeding indicated that Defendant was inadmissible under Sections (6)(C)(ii) and (7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (*Id.*) Defendant signed the blank reverse side of the Expedited Removal Notice. (*Id.* at 3.)

According to a "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" (the "Expedited Removal Record"), Defendant informed an immigration official in relevant part that Defendant (1) understood what the officer was saying, (2) did not have any questions, (3) was born in Distrito Federal, Mexico, (4) attempted to enter the United States by using a birth certificate belonging to someone else, which Defendant bought in Tjuana for $200, (5) did not have legal entry documents, (6) has no applications or petitions pending with INS, and (7) understood that he was being removed from the United States for life. (ECF No. 23-6 at 2–3.) The Expedited Removal Record is two pages long. At the bottom of the first page are written initials that are illegible other than the second letter, which is "N." (*Id.* at 2.) At the bottom of the second page are written initials "RS." (*Id.* at 3.)

A "Jurat for Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" (the "Jurat") indicates that Defendant left Mexico to be with his family, did not have any fear or concern about being returned to Mexico or being removed from the United States, would not be harmed if he was returned to Mexico, and did not have any questions or anything "to add." (ECF No. 23-7 at 2.) Below these statements is an

4

3:18-cr-00232-GPC

assertion that Defendant read the statements or they were read to him, and that the statements are true and complete. (*Id.*) Defendant's signature appears at the bottom of the page. (*Id.*)

According to Defendant, he does not remember an immigration official reading or explaining the Expedited Removal Notice and Defendant was never told he could consult with a lawyer. (ECF No. 23-2 at 4.) He claims that no one ever read or explained any of the documents discussed above to him, and no one asked him if he would prefer to speak to someone in Spanish. (*Id.* at 4–5.) He also asserts that an immigration official placed the documents in front of Defendant, told Defendant to initial and sign them, and that Defendant felt that he would be in more trouble if he did not follow those directions. (*Id.*)

Defendant also claims that the statements attributed to him in the Expedited Removal Record were forged and that he did not say any of them. (*Id.* at 5.) In support of that assertion, Defendant explains that contrary to the statement attributed to him in the Expedited Removal Record, he was born in Guerrero, Mexico, not the Distrito Federal. (*Id.*) Defendant states that throughout this expedited removal process, no one told him he had any option not to sign the paperwork or to withdraw his application to be admitted to the United States. (*Id.*) Defendant states that did not understand what he was signing, and if he had known, he would have asked to withdraw his application so that he could attempt to enter the United States in the future legally. (*Id.*) Defendant was removed from the United States soon after signing the expedited removal paperwork. (*Id.* at 6.)

According to the information in this case, Defendant was found in the United States on December 15, 2017. (ECF No. 9 at 1.)

**II.  Discussion**

**A. Collateral Attacks under 8 U.S.C. § 1326(d)**

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has a due process right to bring a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction. Section

1326(d) expressly provides for such collateral attacks on an underlying deportation order, but establishes limits on them." *United States v. Aguilera-Rios*, 769 F.3d 626, 629–30 (9th Cir. 2014) (citation and internal quotation marks omitted).  Section 1326(d) states:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that--
> 
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  With respect to the last element, "[a]n underlying removal order is 'fundamentally unfair' if (1) an alien's due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Aguilera-Rios*, 769 F.3d at 630 (internal quotation marks omitted).

### B. First Removal Proceeding

Defendant challenges his first removal on the basis that the single conviction listed in the Removal Notice was not an aggravated felony.  As described above, the Removal Notice listed only Defendant's conviction of receipt of stolen equipment in violation of California Penal Code § 495d(a), and asserted that this conviction was an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(G).  Under Section 1101(a)(43)(G), "aggravated felony" under the INA includes "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [i]s at least one year."

#### i. Fundamental Fairness

Defendant argues that the first removal order was fundamentally unfair because receipt of stolen equipment under California law is not a "theft offense" for purposes of § 1101(a)(43)(G).  Because that was the only conviction on which his notice of removal and final removal order relied, Defendant argues, the Removal Notice and the resulting removal order were invalid.  Defendant argues that these deficiencies caused him

6

prejudice because if the immigration official who signed the final order of removal had understood that California receipt of stolen equipment is not a theft offense under § 1101(a)(43)(G), Defendant would not have been removed on that ground, and because there was no other ground listed in the final removal order, the removal order could not have been issued.

Defendant points to two Ninth Circuit cases in support of his prejudice argument. In *Aguilera-Rios*, the defendant challenged his removal on similar grounds as here. There, the defendant was removed after he had been convicted of unlawfully possessing a firearm in violation of California Penal Code § 12021(c)(1). *Aguilera-Rios*, 769 F.3d at 629. The notice the defendant had received asserted that this conviction was a crime involving moral turpitude and a firearms offense, both of which are aggravated felonies for purposes of the INA. *See* 8 U.S.C. §§ 1227(a)(2)(A)(i), 1227(a)(2)(C). The defendant was later found in the United States and convicted with illegal reentry. *Aguilera-Rios*, 769 F.3d at 629. The defendant challenged his conviction on the ground that in light of a recent United States Supreme Court opinion, his firearms conviction was not a firearms offense under the INA. The Ninth Circuit agreed, and because the government had conceded that the conviction was neither a crime of moral turpitude, the court held that "there was no legal basis for [defendant's] 2005 removal order," and "[a]s [the defendant] 'was removed when he should not have been,' he 'clearly suffered prejudice.'" *Id.* at 637 (quoting *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006)).

The other case on which Defendant relies is *Camacho-Lopez*, which the *Aguilera-Rios* court relied upon for its prejudice conclusion. In *Camacho-Lopez*, the defendant was removed after he was convicted of two counts of vehicular manslaughter with gross negligence, which qualified, according to the government, as an aggravated felony. 450 F.3d at 929. After the defendant was later charged with illegal reentry, he argued that his removal proceeding was deficient because a recent Ninth Circuit decision had held that gross vehicular manslaughter while intoxicated was not an aggravated felony for

purposes of the INA. *Id.* (citing *Lara-Cazares v. Gonzales*, 408 F.3d 1217 (9th Cir. 2005)). On appeal of the defendant's illegal reentry conviction, the government conceded that his convictions were not aggravated felonies, and as a result, the immigration judge during the defendant's removal proceedings erroneously told the defendant that he was ineligible for discretionary relief. *Id.* at 930. The government nonetheless asserted that no prejudice resulted from this error. The panel held that that because the defendant's notice to appear "charged him as removable *only* for having committed an aggravated felony, . . . [and his] prior conviction did not fit that definition," he "was removed when he should not have been and clearly suffered prejudice." *Id.* In a footnote, the panel distinguished its case from *United States v. Pallares-Galan*, 359 F.3d 1088, 1092, 1103–04 (9th Cir. 2004), because the defendant in *Pallares-Galan* "had additional convictions alleged in the original Notice to Appear, which also could have supported his removability and led us to remand to the district court to consider the issue of prejudice." *Camacho-Lopez*, 450 F.3d at 930 n.1.

In its opposition to the motion, the government does not respond to the argument that receipt of stolen equipment under California law is an aggravated felony.[2] Rather, the government argues only that Defendant cannot demonstrate prejudice as to this asserted error because at the time Defendant received the Removal Notice he had also been convicted of a different crime qualifying as an aggravated felony: possession of a controlled substance for sale in violation of California Health & Safety Code § 11378. (*See* ECF No. 25 at 5–8.)

The government argues that *Aguilera-Rios* and *Camacho-Lopez* do not support Defendant's prejudice argument because they did not involve a defendant who had been convicted of a different crime that qualified as an aggravated felony prior to the date of

---

[2] By failing to offer a response, the government impliedly concedes that receipt of stolen equipment under California law is not a theft offense under 8 U.S.C. § 1101(a)(43)(G). *See Duthie v. Matria Healthcare, Inc.*, 535 F. Supp. 2d 909, 916 (N.D. Ill. 2008) ("Generally, a party's failure to respond to an opposing party's argument implies concession.").

8

the removal notice. As to those cases, the government argues, "once the[] convictions were properly classified [as not qualifying as an aggravated felony], there was no substantive reason to remove the defendants in those cases." (ECF No. 25 at 7.) The Court agrees. While *Aguilera-Rios* and *Camacho-Lopez* suggest that prejudice is demonstrated when a removal order relies wholly on an invalid removal ground, those decisions do not confront an argument by the government that a different conviction, not included in the notice of removal proceedings, could have supported the defendant's removal order.

While *Aguilera-Rios* and *Camacho-Lopez* do not provide a definitive answer to Defendant's prejudice argument, however, the Court nonetheless concludes that it cannot rely on a non-noticed conviction to save an otherwise invalid removal order. As Defendant argues, the Court cannot rely on Defendant's § 11378 conviction to save the first removal because doing so would violate the so-called *Chenery* Rule, which prohibits courts from upholding administrative action on an alternative ground not first considered by the agency. *See Secs. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). In the context of direct judicial review of removal orders, the Ninth Circuit has held that the *Chenery* Rule prohibits courts from upholding a removal order on the basis of a conviction not included in the notice of removal proceedings. *Al Mutarreb v. Holder*, 561 F.3d 1023, 1029 (9th Cir. 2009) ("Aside from the serious due process concerns that would arise if we were to affirm a removal order on a ground introduced only on appeal and not raised or litigated below, the government's argument fundamentally misunderstands the nature of our review. Whatever the grounds on which Al Mutarreb *might* have been found removable, only one was charged. We have no power to affirm the BIA on a ground never charged by the Service or found by the IJ." (citation omitted)); *see also Chowdhury v. I.N.S.*, 249 F.3d 970, 974–75 (9th Cir. 2001) (reaching the same conclusion, though not invoking *Chenery*). The Ninth Circuit has also rejected a similar alternative-conviction argument on statutory grounds, noting that a Notice to Appear for removal proceedings must contain the "'nature of the proceedings against the alien,' the

'legal authority under which the proceedings are conducted,' the 'acts or conduct alleged to be in violation of the law,' and the 'charges against the alien and the statutory provisions alleged to have been violated.'" *Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1107 (9th Cir. 2006) (quoting 8 U.S.C. § 1229(a)(1)).

District courts in this circuit have extended *Al Mutarreb* and *Chowdhury* to the context of a § 1326(d) collateral attack. That is to say, these courts have concluded that the government cannot rely, to rebut a defendant's showing of prejudice in a § 1326(d) motion, on a conviction not included in a removal notice that nonetheless could have supported the resulting removal order. *See, e.g.*, *United States v. Cortez-Ruiz*, 225 F. Supp. 3d 1093, 1098–1100 (N.D. Cal. 2016) ("The concerns that the Ninth Circuit recognized in *Al Mutarreb* and *Chowdhury* are just as present in a collateral attack as they are in a direct appeal."); *United States v. Dominguez*, No. CR 12-879 CAS, 2013 WL 2237786, at *4–5 (C.D. Cal. May 20, 2013) ("In this procedural context, where the issue is eligibility for deportation, not eligibility for discretionary relief, Ninth Circuit law does not allow courts to consider convictions not alleged in the underlying removal proceedings."); *United States v. Nahun-Torres*, No. CR 12-306 SI, 2013 WL 140047, at *11 (N.D. Cal. Jan. 10, 2013) ("To turn back time now and allow the government to justify the 2007 removal on grounds not charged in the NTA or other notices at that time would raise additional due process concerns."). An unpublished memorandum disposition by a Ninth Circuit panel also extended *Al Mutarreb* to the context of a § 1326(d) motion. *United States v. Magana-Cancino*, 390 F. App'x 643, 646 (9th Cir. 2010). In *Magana-Cancino*—an appeal of a district court's denial of a § 1326(d) motion—the government argued that the defendant did not suffer prejudice because a separate assault with a firearm conviction "could have been used as the basis for his deportation." *Id.* The panel explained: "[w]e rejected this argument in *Al Mutarreb* . . . . We consider only the ground charged. Magana's underlying deportation was defective. It cannot support his conviction." *Id.*

These courts' conclusions make sense. The purpose of a Section 1326(d) proceeding is to provide a defendant with his or her first opportunity for judicial review of a removal order. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding. This principle means at the very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." (citations and footnote omitted)). In that sense, this court's review of Defendant's removal order is analogous to an appeal of the order itself. The Ninth Circuit has made clear that a court may not rely on a conviction not included in a notice of removal proceedings to uphold an otherwise deficient removal order. That principle should also apply in the analogous context of a § 1326(d) motion. In other words, "[t]he fact that the validity of a removal order arises in the context of a collateral attack does not change the fact that a defendant 'did not have the benefit of a hearing' to address uncharged grounds as required by the due process clause." *Cortez-Ruiz*, 225 F. Supp. 3d at 1099–1100 (quoting *Chowdhury*, 249 F.3d at 975).

Because Defendant's first removal order relied solely on a conviction that the government does not dispute was improper, Defendant has demonstrated that had this deficiency not occurred, the removal order would not have been issued. In other words, as Defendant "was removed when he should not have been, he clearly suffered prejudice." *Auilera-Rios*, 769 F.3d at 637 (internal quotation mark omitted). As a result, Defendant has satisfied the "fundamental unfairness" element of his attack of his first removal order.

### ii. Exhaustion and Judicial Review

With respect to his first removal, Defendant has also satisfied the first two elements of a § 1326(d) challenge. The Removal Notice provided Defendant with the

ability to contest the basis of his removal on the following four grounds: (1) "I am a citizen or national of the United States," (2) "I am a lawful permanent resident of the United States," (3) I was not convicted of the criminal offense described in allegation number 6 above [buying or receiving stolen property]," and (4) "I am attaching documents in support of my rebuttal and request for further review." (ECF No. 23-4 at 3.) None of these options permitted Defendant to contest whether the conviction listed in the Removal Notice was an aggravated felony under 8 U.S.C. § 1101(a)(43). As a result, no further administrative remedies were available for Defendant to seek relief against the removal order, *see id.* § 1326(d)(1), and these proceedings deprived Defendant of the opportunity for judicial review on this basis, *see id.* § 1326(d)(2).

**C. Second Removal**

Defendant argues that his second removal violated due process because during that expedited removal, Defendant was not (1) informed of the charge against him, (2) informed of the specific laws rendering him inadmissible, or (3) given an opportunity to review his sworn statement. He contends that that these violations prejudiced him because if he was offered these procedural protections, he would have asked to withdraw his application for admission to the United States and immediately departed. As explained below, the Court concludes Defendant has not satisfied the elements of § 1326(d) as to this removal order because he has not demonstrated that such due process violations caused him prejudice.

Aliens subject to expedited removal proceedings "are deemed 'applicants for admission' into the United States, regardless of whether they seek to enter at a port of entry or have already entered the country." *Id.* at 1199 (quoting 8 U.S.C. § 1225(a)(1)). "Unless an alien professes a fear of persecution or claims to be a lawful permanent resident (LPR), an expedited removal order is not subject to administrative appeal. However, the Attorney General has the discretion to provide a type of statutory relief to certain aliens: withdrawal of application for admission. When an individual is permitted to 'withdraw' his application for admission, he may leave voluntarily and without a

removal order, and thus without facing formal immigration consequences." *Id.* at 1200 (citations and internal quotation marks omitted). Withdrawal of application for admission is the "only form of discretionary relief available in expedited removal proceedings." *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015).

Defendant claims that if he had understood the implications of the expedited removal hearings he would have asked to withdraw his application for admission. To obtain relief through his § 1326(d) motion on this basis, Defendant must demonstrate that it was at least plausible that this request for withdrawal of application for admission would have been granted. *Id.* He "cannot succeed by merely showing a theoretical possibility of relief, but he need not prove that relief was probable." *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) (internal quotation marks and alterations omitted). The Court's analysis on this issue follows two steps: first, it considers "the factors relevant to the [agency's] exercise of discretion for the relief being sought," and then it determines "whether, in light of the [relevant] factors . . . and based on the unique circumstances of the [defendant's] own case, it was plausible that the agency official considering the defendant's case would have granted" a request by Defendant to withdraw his application for admission. *Id.* at 1206.

The primary source of the relevant factors in this analysis is the "Inspector's Field Manual,[3] an internal agency document that counsels immigration officers as to when to grant withdrawal of application for admission." *Id.* at 1206–07. The Field Manual is not entitled to the force law; rather, it "provides helpful insight as to when relief is plausible." *Id.* at 1207. It calls "for a highly individualized determination and instructs officers to consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice." *Id.* (internal quotation marks

---

[3] The Field Manual discussed in *Raya-Vaca* and *Garcia-Gonzalez* was in effect at the time of Defendant's May 2007 expedited removal. *See* INS Inspector's Field Manual § 17.2(a) (2007), *available at* Westlaw FIM-INSFMAN 17.2, 2007 WL 7710869 (noting an effective date of April 19, 2007).

13

omitted). It enumerates six non-exhaustive factors for consideration: (1) "the seriousness of the immigration violation," (2) "previous findings of inadmissibility against the alien," (3) "intent on the part of the alien to violate the law," (4) "ability to easily overcome the ground of inadmissibility," (5) "age or poor health of the alien," and (6) "other humanitarian or public interest considerations." *Id.* Crucial for this Court's analysis is that the Field Manual "identifies germane considerations, noting in particular that withdrawal should 'ordinarily' not be permitted 'in situations where there is obvious, deliberate fraud on the part of the applicant.'" *Id.* (quoting *Barajas-Alvarado*, 655 F.3d 1077, 1090 (9th Cir. 2011)). The Ninth Circuit has stated that such fraud has a "'disqualifying effect' given the Field Manual's focus on obvious, deliberate fraud on the part of the applicant." *Garcia-Gonzalez*, 791 F.3d at 1179 (quoting *Barajas-Alvarado*, 655 F.3d at 1091).

Here, all of the Field Manual's factors weigh against Defendant. The first and third factors weigh strongly against Defendant because he engaged in deliberate fraud by attempting to enter the United States by lying about his citizenship and presenting a fraudulent document. *See Garcia-Gonzalez*, 791 F.3d at 1179 ("Garcia attempted to enter the United States with false documents of citizenship. . . . Thus, the first and third factors from the Field Manual weigh strongly against discretionary relief."). As to the fourth factor, Defendant cannot easily overcome the grounds of inadmissibility noted in the Expedited Removal Notice, which included the assertion that, under 8 U.S.C. § 1182(a)(7)(A)(i)(I), Defendant was not in possession of a valid entry documents. Defendant "has failed to produce any evidence demonstrating that he had a right to remain in the country, that he had any visa petitions pending [at the time of the expedited removal proceedings], or that he could have obtained proper documents through family-based adjustment of status." *United States v. Avalos-Perez*, No. 3:16-cr-02827-GPC, 2017 WL 1400018, at *7 (S.D. Cal. Apr. 19, 2017). As to the fifth factor, at the time Defendant was in expedited removal proceedings, he was approximately 20 years old and there is no evidence that he was in less than good physical and mental health. As to the

sixth factor, while Defendant has stated that he has family in the United States, his declaration says nothing about his relationship with those individuals in May 2007. Last, the only factor that potentially weighs in Defendant's favor is the second factor—previous findings of inadmissibility—because his only previous finding of inadmissibility was invalid, for the reasons explained in the section above. But as this Court has noted, "[a] previously finding of removability—albeit an invalid one—still weighs against the plausibility of relief." *Id.* at *6 (citing *Garcia-Gonzalez*, 791 F.3d at 1179).

These circumstances make Defendant's case remarkably similar to those in which the Ninth Circuit has rejected claims of prejudice resulting from improper removal proceedings. In *Garcia-Gonzalez*, the defendant was brought to the United States from Mexico at the age of eight; had five children, one of which had Down Syndrome; and was later convicted of possession of cocaine and "several" other misdemeanors. 791 F.3d at 1178. Considering the Field Manual factors, the panel held that the defendant did not demonstrate that it was plausible he would have been granted withdrawal of his application for admission. *Id.* at 1179–80. The court explained that the defendant had "attempted to enter the United States with false documents of citizenship," which caused the "first and third factors from the Field Manual [to] weigh strongly against discretionary relief." *Id.* at 1179. As to the second factor, the court noted that the defendant had been removed previously, and that it did not matter whether that removal "would support a § 1326 conviction." *Id.* The fourth factor weighed against the defendant because his conviction for possession of cocaine rendered him inadmissible. *Id.* As did the fifth factor, because Defendant did not indicate he was old or in poor health at the time of his expedited removal. *Id.* at 1179–80. As for the sixth factor—humanitarian and other public interests—the court noted that even though the defendant had children, one of which had a developmental disability, the record did not suggest the defendant provided any "provision of care." *Id.* at 1180. Because these factors all pointed against a likelihood that withdrawal of application would have been granted, the panel held that the defendant had not shown prejudice as a result of any due process

violations. *Id.*; *see also Barajas-Alvarado*, 655 F.3d at 1090–91 (reaching the same conclusion, noting that the defendant had previously been removed, had deliberately used false documents to attempt to enter the United States, and was 35 at the time of his most recent expedited removal).

This Court and others in this district have rejected claims of prejudice after considering similarly situated defendants. *See, e.g.*, *United States v. Angulo-Galaviz*, No. 17-cr-3671-CAB, 2018 WL 1942367, at *4–6 (S.D. Cal. Apr. 25, 2018) (finding no prejudice after considering the Field Manual factors when defendant presented fraudulent documents to inspection officers, had no previous findings of inadmissibility, was 28 at the time and did not allege health issues, and had neither a long-term partner who was a citizen or children in the United States); *Avalos-Perez*, 2017 WL 1400018, at *5–9 (same, even assuming the defendant did not attempt to enter using fraudulent documents, when the defendant had previously been convicted of illegal reentry, had previously been removed (even assuming that removal was invalid), could not obtain proper documents to overcome the finding of inadmissibility, was 44 and did not indicate he was in poor health at the time of removal, and had a criminal history including misdemeanor convictions for possession of a controlled substance and obstruction and evasion of a police officer); *United States v. Soto-Garcia*, No. 16-cr-2641-GPC, 2017 WL 991106, at *8–11 (defendant misrepresented his identity to gain admission into the United States, had one allegedly invalid prior removal, was 24 at the time and did not indicate he was in poor health, and had an uncle and girlfriend living in the United States).

Contrary to Defendant's argument, his circumstances are unlike the defendant's in *Raya-Vaca*. There, the court relied heavily on the fact that the defendant had extensive familial ties in the United States, which included a long-term partner and two children, all of whom were United States citizens. 771 F.3d at 1198, 1208. And, perhaps most crucially, the defendant in *Raya-Vaca* did not attempt to enter the United States using fraudulent documents. The panel explained that this was a "crucial consideration," and rendered Raya-Vaca unlike the defendant in *Barajas-Alvarado*. *Id.* at 1208.

| | |
|---|---|
| 1 | Finally, Defendant's attempt to rely on statistics and comparable cases is unavailing. Even assuming the statistics cited by Defendant suggest that immigration officials were receptive to requests to withdraw applications for admission, "Ninth Circuit case law strictly limits the probative value of statistics. [A]bsent other indicia suggesting that relief would have been plausible, [Defendant's] statistical argument cannot carry his burden." *Soto-Garcia*, 2017 WL 991106, at *9. As for Defendant's comparator cases (*see* ECF Nos. 23-12, 23-13, 23-14, 23-15), while they do present instances in which individuals similarly situated to Defendant have been granted withdrawal of application for admission, the Court must follow controlling precedent, particularly *Garcia-Gonzalez*, which presents circumstances virtually identical to those in this case. These few comparator cases prove, at most, that it is *possible* that a request for withdrawal of application for admission by Defendant would have been granted; they do not demonstrate plausibility. |

In sum, Defendant has failed to show prejudice resulting from any due process violation occurring during his May 2007 expedited removal. As a result, he cannot collaterally attack that removal as a basis for his prosecution under 18 U.S.C. § 1326.

### III. Conclusion

Defendant's collateral attack of his May 2007 expedited removal fails. The Court therefore DENIES the motion to dismiss.

**IT IS SO ORDERED.**

Dated: July 11, 2018

Hon. Gonzalo P. Curiel
United States District Judge